Argued December 13, 1978, affirmed January 29, 1979

# HOMECO, INC., *Respondent,*
## *v.*
# BELFORD et ux, *Appellants.*
## (No. 76-664-L, CA 10670)

589 P2d 1202

Donald F. Myrick, of Myrick, Coulter, Seagraves, Nealy and Myrick, Grants Pass, argued the cause and filed briefs for appellants.

Michael D. Snider, of Schultz, Salisbury, Cauble & Snider, Grants Pass, argued the cause and filed a brief for respondents.

Before Schwab, Chief Judge, Gillette and Roberts, Judges, and Howell, Judge pro tempore.

HOWELL, J. pro tempore.

**HOWELL, J.** pro tempore.

This is an action at law on a written contract for construction of a residence. The trial court, sitting without a jury, entered judgment for plaintiff, and defendants appeal.

Plaintiff is an Oregon corporation engaged in the business of building construction. Defendants engaged plaintiff to construct a residence for them in Josephine County. The parties entered into a one-page written form contract containing the following typed provisions:

> "Construction of home per plans and specifications which by reference hereto become a part of this proposal. * * * Cost of construction is $26,688.00 * * *. * * * Any item not covered by plans and specifications or noted above to be discussed with owners for concurrence. Any changes, adding cost, are to be considered an extra to above noted cost. * * *"

Near the bottom of the page was the following printed matter:

> "* * * Any alteration or deviation from above specifications involving extra costs will be executed only on written orders and will become an extra charge over and above the estimate."

During the course of construction, defendants requested improvements that added to the cost of labor and materials. At least some of these improvements were made without any written authorization from defendants. When plaintiff billed defendants after completion of the home, they refused to pay for the items designated "extras."

Plaintiff then brought this action to recover for the "extras" and for a portion of the unpaid balance on the contract. Defendants demurred to the complaint on the ground that plaintiff had failed to allege written authorization for the extras. The trial court overruled the demurrer, and defendants filed an answer and counter-claim, again alleging lack of written authori-

[ 301 ]

zation, and also alleging that plaintiff did not construct the residence in a workmanlike manner.

Following a trial, the court entered judgment for plaintiff. In a written opinion, the court concluded that the typed provisions in the contract modified the printed matter, thereby obviating the need for written authorization of the "extras." The court also concluded that plaintiff had substantially performed its part of the contract subject to minor deviations for which the court ordered an offset. Finally, the court determined that the defects in construction of the bathroom of which defendants complained were the responsibility of defendants' own agent.

Defendants first contend that the trial court erred in concluding that the typed contract provisions modified the printed provision requiring written authorization for extras.

■■ As a general rule, the construction of a clearly written contract is a question for the court. *May v. Chicago Insurance Co.,* 260 Or 285, 292, 490 P2d 150 (1971). If, however, the language contained in the contract is capable of more than one meaning, there may be questions for the trier of fact. As the court observed in *May v. Chicago Insurance Co.,* supra:

> " 'The [factfinder's] function in the interpretation of documents then will arise wherever, in view of the surrounding circumstances and usages offered in evidence, the meaning of the writing is not so clear as to preclude doubt by a reasonable man of its meaning.' "
> 260 Or at 293, quoting 4 Williston on Contracts 660 (3d ed 1961).

In the present case, accordingly, this court is required to answer two questions. First, was the language of the written contract capable of more than a single meaning? And, if so, was there any substantial evidence to support the trial court's conclusion that the parties intended the requirement of written authorization of "extras" to be inoperative? We answer both questions affirmatively.

 The typewritten language in the contract requires any "item not covered by plans and specifications" to be "discussed." Since "discussions" normally are not conducted in writing, this seems to indicate that "extras" could be authorized orally. This reading of the language makes even more sense when one realizes that defendants were in California during most of the first two months of construction, thus making written authorization of extras impractical. The trial court also was entitled to consider that the requirement of written authorization was printed, while the language requiring "discussion" was typed, thereby raising at least the possibility that the parties intended to eliminate the need for written authorization of extras.

Under these circumstances, we cannot say that the writing is "so clear as to preclude doubt by a reasonable man of its meaning."[1] *May v. Chicago Insurance Co.,* supra at 293. Our inquiry must therefore turn to whether there was any substantial evidence that would permit the trial court, sitting as trier of the facts, to conclude that the parties intended the requirement of written authorization for extras to be inoperative. Clark Johnson, principal owner of plaintiff, testified that he intentionally added the typed language to cover the matter. Although defendants disputed the meaning of the typed language, the trial court found that defendant Paul Belford, himself an experienced contractor, requested the additional work knowing that it would add to the cost of the completed building. In light of the conflicts in the testimony, the trial court's conclusion as to the facts cannot be overturned on appeal.

---

[1] Our conclusion that the writing was ambiguous disposes of defendants' contentions that plaintiff should have pleaded written authorization and that the trial court erred in allowing parol evidence to be intrduced to explain the writing. Since there was a question as to whether the contract required written authorization for extras, plaintiff's failure to plead written authorization did not render its complaint subject to demurrer. The parol evidence rule, ORS 41.740, does not apply when the writing is ambiguous.

■ The remaining assignment of error warranting discussion concerns defendants' claim that one of the bathrooms was defectively constructed.[2] The evidence showed that the architect who designed the house, Vern Lowe, marked an incorrect measurement on the plans, resulting in a bathroom that was 6 inches too narrow. The trial court concluded that any error was Lowe's responsibility, that Lowe was the agent of defendants, and that defendants' remedy, if any, is against Lowe, not against plaintiff. Defendants dispute the trial court's conclusion that Lowe was their agent and further contend that even if Lowe was an agent of defendants, Johnson should nevertheless have discovered the error on his own.

■ We find ample evidence to support the trial court's conclusion that Lowe was the agent of defendants. Lowe prepared the plans for the home under the direction of defendants and was paid by defendants. The only connection between Lowe and plaintiff appears to be that Clark Johnson knew Lowe and recommended him to defendants. There is no evidence that plaintiff guaranteed the quality of Lowe's work.

■ Nor can we accept defendants' argument that Clark Johnson was negligent in failing to discover the error on his own. Defendants offered no testimony to show that it is unreasonable for a contractor to rely on an architect's called measurements in constructing a building, despite the fact that four contractors other than Johnson testified at trial. We hold that the evidence supports the trial court's finding that any error in the construction of the bathroom was not attributable to plaintiff.

Affirmed.

---

[2] We have considered defendants' fourth assignment of error and find it without merit. If plaintiff's pleading was unclear concerning the scope of the written contract, any such lack of clarity was cured by plaintiff's proof at trial.